UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ZALEWSKI,

    Plaintiff,                             Case No.

    -vs-                                  Hon.

SCOVIL HANNA CORPORATION,
doing business as ARROWHEAD
INDUSTRIES CORP.,

    Defendant.

---

Darcie R. Brault (P43864)
Phillip M. Keller (P84078)
MCKNIGHT, CANZANO, SMITH,
RADTKE & BRAULT, P.C.
*Attorneys for Plaintiff*
423 N. Main St. Suite 200
Royal Oak, MI 48220
(248) 354-9650
dbrault@michworkerlaw.com
pkeller@michworkerlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, MARK ZALEWSKI, by his counsel,

McKnight, Canzano, Smith, Radtke & Brault, P. C., and for his cause of action

states as follows:

### *Jurisdiction and Venue*

1. Plaintiff alleges age discrimination and retaliation in violation of the

Age Discrimination and Employment Act, 29 U.S.C.A. § 621 *et seq* ("ADEA")

and the Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq* ("ELCRA").

2. Plaintiff, MARK ZALEWSKI (hereinafter "ZALEWSKI") is an individual residing in Wayne County, Michigan.

3. Defendant SCOVIL HANNA CORPORATION is a Delaware corporation doing business as Arrowhead Industries Corporation (hereinafter "ARROWHEAD").

4. ARROWHEAD maintains its principal place of business in Cleveland, Ohio.

5. Under 28 U.S.C. §1332 (diversity), this Court has original jurisdiction of this action.

6. Under 28 U.S.C. §1331 (federal question), this Court has original jurisdiction of this action.

7. This court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because they arise from the same operative facts.

8. ARROWHEAD conducts business as a metal supplier to both domestic and international clients nationwide and internationally, including within the Eastern District of Michigan.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant conducts business in the Eastern District of Michigan and a substantial

part of the events giving rise to this claim occurred in this district.

## *Factual Allegations*

10. ZALEWSKI was born in 1962.

11. ZALEWSKI earned a Bachelor of Science degree in Manufacturing Engineering, a Master's degree in Business Administration Marketing and a Master of Science degree in Applied Statistics.

12. ZALEWSKI established a career as a sales executive. Over the past 15 years, he has held senior positions, managing personnel in engineering, program management and sales/marketing groups.

13. ZALEWSKI developed, implemented, and maintained successful business and marketing strategies in North America, Europe and Asia, resulting in improved profits and increased revenues and customer base.

14. ZALEWSKI established an excellent reputation in the industry.

15. In September of 2016, Alex Scovil, then Chairman and CEO of ARROWHEAD, and his son Alec Scovil, President, hired ZALEWSKI as Vice President of Sales and Marketing.

16. ZALEWSKI was invited to be a member of the ARROWHEAD Leadership Team, in addition to his role as Vice President of Sales and Marketing.

17. ZALEWSKI's performance for ARROWHEAD was at all times satisfactory and often exceeded expectations.

18. ZALEWSKI worked long hours, often working during "vacation" and other days off and after normal business hours.

19. In September of 2019, the Scovils hired Neal Sheehan ("Sheehan") as the Chief Financial Officer (CFO) and invited him to the ARROWHEAD Leadership Team.

20. In 2019, Sheehan was approximately 34 years old.

21. Within one to two weeks, Sheehan was made Acting President of ARROWHEAD.

22. Shortly thereafter ARROWHEAD determined to initiate a business operations process entitled "EOS" which involved a two-year implementation of targeted improvements to the business.

23. The Scovils advised ZALEWSKI to report to CFO Sheehan.

24. From the beginning, CFO Sheehan singled ZALEWSKI out and scrutinized his performance.

25. Sheehan nitpicked ZALEWSKI's travel expenses.

26. Sheehan marginalized and minimized ZALEWSKI's business suggestions.

27. Sheehan marginalized and minimized ZALEWSKI's business successes.

28. Sheehan injected himself into ZALEWSKI's sales meetings with

clients and interfered with the process, e. g. by telling ZALEWSKI not to lead the meetings, for example, and to allow Sheehan to lead the meeting.

29. Sheehan also interfered with ZALEWSKI's participation in internal sales strategy meetings.

30. Sheehan often made stereotyping comments about ZALEWSKI's age.

31. Sheehan took issue with ZALEWSKI working remotely, expressing agitation that he could not "see" or "know" what ZALEWSKI was doing as he worked.

32. Sheehan made age stereotyping comments that ZALEWSKI was engaging in leisure activities if he was not aware of ZALEWSKI's whereabouts or activities.

33. Sheehan stated that he hoped ZALEWSKI was "enjoying his time on the water," "on his boat" and "at his cottage," frequently implying that ZALEWSKI was in retirement mode, rather than working.

34. Sheehan questioned ZALEWSKI about whether he had "children at home."

35. Sheehan told ZALEWSKI that he was expected to work 11-hour days because he did not have "children at home."

36. ZALEWSKI felt disrespected, undermined, and demeaned by Sheehan's treatment.

37. ZALEWSKI observed that Sheehan did not treat younger employees in the same manner he treated ZALEWSKI.

38. As early as June of 2020, ZALEWSKI complained to the Scovils that Sheehan treated him unfairly and that he felt harassed.

39. ZALEWSKI asked that his internal emails complaining about Sheehan be placed in his personnel file.

40. In September of 2020, Alec Scovil was in the process of purchasing the company from his father, Alex Scovil. From that time, ever increasing control of the business and direction of the business was migrated from Alex Scovil to his son, Alec Scovil and Sheehan.

41. In September of 2020, Alec Scovil was in his mid-thirties.

42. On January 14, 2021, Sheehan called ZALEWSKI into a "Same Page" meeting with him, alone, without providing any indication to ZALEWSKI that the meeting was intended as a performance review or providing him documentation ahead of the meeting.

43. During the meeting, Sheehan told ZALEWSKI that he was not allowed to speak and then read from a previously prepared document alleging ZALEWSKI's performance deficiencies.

44. ARROWHEAD took no action before January 2021, to correct ZALEWSKI's alleged performance deficiencies.

45. ZALEWSKI believed that ARROWHEAD intended to terminate him.

46. ZALEWSKI wrote a rebuttal to the alleged performance deficiencies.

47. One of the alleged deficiencies was identified as outside ZALEWSKI's responsibilities and was actually assigned to a younger worker. Rather than correct the error, ARROWHEAD removed the responsibility from the younger worker and assigned it to ZALEWSKI.

48. No action was taken to correct the alleged performance deficiency when ARROWHEAD ascertained that it was committed by the younger worker and not ZALEWSKI.

49. In response to ZALEWSKI's rebuttal, the Scovils expressed agreement but did not take action to correct the "Same Page" document or remove it from ZALEWSKI's personnel record.

50. Neither did the Scovils express that ZALEWSKI's concerns about termination were unwarranted, leaving the impression that they intended to proceed with termination.

51. ZALEWSKI is aware of another, younger, employee who was given a poor performance review who was placed on a performance improvement plan which included measurable areas of improvement and a time period in which to accomplish the goals.

52. ARROWHEAD did not provide ZALEWSKI with tools for

7

performance improvement, either by way of a performance improvement plan or through training that ZALEWSKI requested but was not provided.

53. ZALEWSKI, in early February, had the most assignments of any person on the Leadership Team and ARROWHEAD's EOS performance tracking system showed that he was "green" (satisfactory) for every assignment.

54. On February 25, 2021, ZALEWSKI made an internal complaint of age discrimination.

55. ARROWHEAD's Human Resources employee, Xi Song, conducted an "investigation" that failed to investigate ZALEWSKI's claims and was, in fact, a sham.

56. ARROWHEAD used the investigation process to malign ZALEWSKI amongst his coworkers and to implicitly threaten others within the protected class against making claims of discrimination or supporting ZALEWSKI.

57. Unsurprisingly, the sham "investigation" resulted in a "finding" that no discrimination occurred.

58. After the "investigation" concluded, ARROWHEAD made no effort to move forward with "corrective action" or make any effort to address ZALEWSKI's alleged performance issues.

59. In early March 2021, ZALEWSKI, again, complained of age discrimination and asked ARROWHEAD to discuss the complaints and his

continued employment between legal counsel.

60. ARROWHEAD did not address the complaints through legal counsel.

61. ARROWHEAD terminated ZALEWSKI effective April 30, 2021.

62. Despite allegations of performance deficiencies, ARROWHEAD insisted that ZALEWSKI train his replacement.

63. The employee who replaced ZALEWSKI is in his early 30s.

64. ZALEWSKI timely filed a complaint with the Equal Employment Opportunity Commission.

65. A "Right to Sue" letter was received by ZALEWSKI on September 16, 2021.

### *Count I: Age Discrimination in Violation of the ADEA*

66. ZALEWSKI incorporates paragraphs 1 through 65 above as if fully and specifically repeated herein.

67. ARROWHEAD is an employer within the meaning of Section 11(b) of the ADEA (29 U.S.C.A. 530(b)).

68. ARROWHEAD is an industry affecting commerce as defined in Section 11(h) of the Act (29 U.S.C.A. § 630(h)).

69. While employed by ARROWHEAD, ZALEWSKI was subjected to age discrimination by ARROWHEAD, by and through their agents, servants and/or employees, said acts being made unlawful by the ADEA, 29 U.S.C.A. §§

621, *et seq.*

70. ARROWHEAD, by and through its agents, servants and/or employees violated the ADEA by:

   a. Treating ZALEWSKI differently because of his age;

   b. Subjecting ZALEWSKI to increased scrutiny not directed at younger employees;

   c. Making derogatory comments to ZALEWSKI based on age stereotypes;

   d. Failing to investigate ZALEWSKI's claims of age discrimination;

   e. Conducting a sham investigation of ZALEWSKI's complaints;

   f. Maligning ZALEWSKI while purportedly investigating his claims of age discrimination;

   g. Unfairly evaluating ZALEWSKI's work performance;

   h. Terminating ZALEWSKI because of his age; and

   i. Other acts of discrimination yet to be discovered.

71. ARROWHEAD's actions in violation of the ADEA were willful and in reckless or callous indifference to ZALEWSKI's federally protected rights.

72. As a direct and proximate result of ARROWHEAD's violation of the ADEA, ZALEWSKI has suffered and will in the future suffer damages, including, but not limited to:

   a. Loss of employment and all compensation flowing from that employment;

      b. Loss of promotional opportunities;

      c. Loss of employee benefits;

      d. Loss of wages and earning potential;

      e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

      f. Other damages to be determined.

WHEREFORE, ZALEWSKI prays for Judgment against ARROWHEAD for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, attorney fees and punitive damages.

### *Count II: Retaliation in Violation of the ADEA*

73. ZALEWSKI incorporates paragraphs 1 through 72 above as if fully and specifically repeated herein.

74. ZALEWSKI engaged in protected activity when he complained of age discrimination and asked ARROWHEAD to engage with legal counsel to resolve his complaints of age discrimination and retaliation.

75. The ADEA prohibits retaliation against employees who oppose violations of the ADEA, 29 U.S.C.A. § 623(d).

76. ARROWHEAD retaliated against ZALEWSKI in derogation of the ADEA by:

      a. Failing to take prompt and remedial action when ZALEWSKI

      notified ARROWHEAD of age discrimination;

   b. Failing to adequately investigate ZALEWSKI's claims of age discrimination;

   c. Conducting a sham investigation of ZALEWSKI's complaints;

   d. Maligning ZALEWSKI during the supposed investigation of his claims;

   e. Unfairly evaluating ZALEWSKI's work performance;

   f. Terminating ZALEWSKI's employment because of his claims that he was being discriminated against based on his age;

   g. Other acts of retaliation to be determined through discovery.

77. ARROWHEAD's actions in violation of the ADEA were willful and in reckless or callous indifference to ZALEWSKI's federally protected rights.

78. As a direct and proximate result of ARROWHEAD's retaliatory conduct toward ZALEWSKI, ZALEWSKI has suffered and will in the future suffer damages including, but not limited to:

   a. Loss of employment and all compensation flowing from that employment;

   b. Loss of promotional opportunities;

   c. Loss of employee benefits;

   d. Loss of wages and earning potential;

   e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

   f. Other damages to be determined.

WHEREFORE, ZALEWSKI prays for Judgment against ARROWHEAD for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, attorney fees and punitive damages.

### *Count III: Age Discrimination in Violation of the ECLRA*

79. ZALEWSKI incorporates paragraphs 1 through 78 above as if fully and specifically repeated herein.

80. ARROWHEAD employed ZALEWSKI within the meaning of the ELCRA.

81. ARROWHEAD is an employer within the meaning of the ELCRA.

82. The ELCRA prohibits, among other things, discrimination based upon age.

83. ARROWHEAD, by and through its agents, servants and/or employees discriminated against ZALEWSKI, in violation of the ELCRA, by:

    a. Treating ZALEWSKI differently because of his age;

    b. Subjecting ZALEWSKI to increased scrutiny not directed at younger employees;

    c. Making derogatory comments to ZALEWSKI based on age stereotypes;

    d. Failing to investigate ZALEWSKI's claims of age discrimination;

    e. Conducting a sham investigation of ZALEWSKI's complaints;

  f. Maligning ZALEWSKI while purportedly investigating his claims of age discrimination;

  g. Unfairly evaluating ZALEWSKI's work performance;

  h. Terminating ZALEWSKI because of his age; and

  i. Other acts of discrimination yet to be discovered.

84. As a direct and proximate result of ARROWHEAD's violation of the ELCRA, ZALEWSKI has suffered a loss of earnings and benefits, and will so suffer in the future; has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

85. As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

  a. Loss of employment and all compensation flowing from that employment;

  b. Loss of promotional opportunities;

  c. Loss of employee benefits;

  d. Loss of wages and earning potential;

  e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

  f. Other damages to be determined.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for

the injuries and damages sustained, together with interest, costs, and attorney fees.

### *Count IV: Retaliation in Violation of the ELCRA*

86.     Plaintiff incorporates paragraphs 1 through 85 above as if fully and specifically repeated herein.

87.     Pursuant to MCL 37.2701(a) it is a violation of the ELCRA to retaliate or discriminate against an employee that has participated in a charge of age discrimination or opposed age discrimination.

88.     Defendants retaliated against Plaintiff by:

   a. Failing to take prompt and remedial action when ZALEWSKI notified ARROWHEAD of age discrimination;

   b. Failing to adequately investigate ZALEWSKI's claims of age discrimination;

   c. Conducting a sham investigation of ZALEWSKI's complaints;

   d. Maligning ZALEWSKI during the supposed investigation of his claims;

   e. Unfairly evaluating ZALEWSKI's work performance;

   f. Terminating ZALEWSKI's employment because of his claims that he was being discriminated against based on his age;

   g. Other acts of retaliation to be determined through discovery.

89.     As a direct and proximate result of ARROWHEAD's retaliatory conduct toward ZALEWKSI, ZALEWSKI has suffered and will in the future suffer damages including, but not limited to:

a. Loss of employment and all compensation flowing from that employment;

b. Loss of promotional opportunities;

c. Loss of employee benefits;

d. Loss of wages and earning potential;

e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

f. Other damages to be determined.

WHEREFORE, ZALEWSKI prays for Judgment against ARROWHEAD for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees.

>Respectfully submitted,
>
>McKNIGHT, CANZANO, SMITH
>RADTKE & BRAULT, P.C.
>
>By: */s/ Darcie R. Brault*
>    Darcie R. Brault (P43864)
>    Phillip M. Keller (P84078)
>    MCKNIGHT, CANZANO, SMITH,
>    RADTKE & BRAULT, P.C.
>    *Attorneys for Plaintiff*
>    423 N. Main St. Suite 200
>    Royal Oak, MI 48220
>    (248) 354-9650
>    dbrault@michworkerlaw.com
>    pkeller@michworkerlaw.com

Dated: December 3, 2021

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

                Respectfully submitted,

                McKNIGHT, CANZANO, SMITH
                RADTKE & BRAULT, P.C.

By:   */s/ Darcie R. Brault*
       Darcie R. Brault (P43864)
       Phillip M. Keller (P84078)
       MCKNIGHT, CANZANO, SMITH,
       RADTKE & BRAULT, P.C.
       *Attorneys for Plaintiff*
       423 N. Main St. Suite 200
       Royal Oak, MI 48220
       (248) 354-9650
       dbrault@michworkerlaw.com
       pkeller@michworkerlaw.com

Dated:  December 3, 2021